## OLIVER'S ADM'R

### *v.*

## HAYES'S ADM'R.

*(Supreme Court of Appeals of Virginia, January, 1877.)*

[Virginia Law Journal, 1877, p. 51.]

**Evidence—Competency of Witnesses—Case at Bar.**

In a suit by the administrator of A. against the administrator of B. on a bond given by B. to A. during their lifetime, C., whose name had been erased from a former bond payable to A. in which B. was one of the obligors, which bond formed the foundation of the bond sued on, was called as a witness to prove the circumstances attending the erasure of his name: *held*, C. is a competent witness.

**Same—Same—Same.**

Upon the trial, D., the widow of B., was called as witness to prove certain facts which occurred in B.'s lifetime relating to the execution of the bond sued on: *held*, the rule of law excluding the testimony of a surviving husband or wife as to facts occurring during the coverture is not confined to confidential communications between the parties, but extends to all matters which he or she would be incompetent to prove in a suit brought during the lifetime of the other, and D. is therefore incompetent.

Debt on Bond.—The facts sufficiently appear in the opinion.

*Page & Maury* and *Wattles*, for plaintiff in error.

*Geo. B. Finch* and *Barksdale*, for defendant in error.

BARTON, J., delivered the opinion of the court.

This was an action of debt on a bond for $1,100, dated the 23d February, 1867, brought by Alex. Sydnor, adm'r d.

b. n. of Wm. W. Oliver, dec'd, against Wm. F. Davis
adm'r of Geo. L. Hayes, dec'd. The defence was that the
bond was obtained by fraud. To support the defence the
deposition of Mrs. Fanny C. Hayes, the widow of the in-
testate, George L. Hayes, taken by consent, subject to legal
exceptions, was offered in evidence for the purpose of prov-
ing a conversation which had occurred in her presence
between her husband and Wm. W. Oliver, the intestate of the
plaintiff, in which the said Oliver admitted that he had agreed
to take her husband's name off a bond for $3,000 held by him,
to which her husband was one of the securities, and assigned
as his reason for not complying with his promise, that such
erasure of a bond would render it worthless. On being told
by Hayes that he was under the impression that the bond
was already worthless by reason of the erasure of the name
of D. B. Hatcher, another security, Oliver positively denied
that Hatcher had ever been a security to the bond, and stated
that he had been offered as a surety but had failed to sign
it; and that he, Hayes, was the only obligor whom he con-
sidered solvent, that Hayes then offered $500 to be released,
which not being accepted, he offered to give his bond for
$1,100. Oliver took that offer under consideration, and the
bond in suit was subsequently executed, though she was not
present at the time. That after the offer to give the new
bond was made, Oliver, in response to a request from Hayes
to be shown the bond for $3,000, stated it was put away
very securely at home among his papers and would require
a longer search for it than he felt able to undertake. Objec-
tion was made to the competency of the witness to give this
evidence, but the court being of opinion that "the facts
deposed to by the witness were not acquired by reason of
the relation of husband and wife, and that the disclosure
thereof by her would constitute no breach of the confiden-
tial relation existing between husband and wife; but that
the facts were such as might have been acquired and deposed

to by any other witness," overruled the objection and admitted the evidence. This constitutes the plaintiff's first bill of exceptions.

His second bill of exceptions was taken to the admission of D. B. Hatcher as a witness to prove that his name, which was shown by an inspection of the bond for $3,000, dated March 15, 1858, and produced in court, to have been erased, was erased in his presence and for the purpose of releasing him from further liability as a security, on the ground, that the other party to the transaction, the witness was called to prove, was dead.

I think this exception was not well taken. · Hatcher was competent to prove the facts he deposed to. He was neither a party to the suit nor interested in its event, and was competent at common law before our statute in relation to witnesses, passed on the 2d of March, 1866. That statute was designed to extend, not to curtail the competency of witnesses. The first section removes the general incompetency springing from interest. The second section states exceptions to, and the qualified operation of the first section in certain cases.

I think it clear that only those were within the purview of the statute who were incompetent by reason of interest either as parties or being interested in the event of the suit, and that it should not be so construed as to render a witness incompetent who was competent before it was passed.

Besides, in this case, the contract or transaction as to which the witness Hatcher was introduced to testify was his release from liability as one of the securities on the bond for $3,000, not the liability of Hayes on the bond for $1,100, which was "the subject of the investigation." It is true that his evidence had a material bearing on the subject of the investigation, otherwise it would not have been admissible, because of irrelevancy. It would be a perversion of the statute and productive of much mischief so to apply it

as to exclude the evidence of the surviving party to all contracts and transactions connected with or bearing upon that particular transaction, which should be the subject of the investigation to which he was not a party, and in the result of which he was not interested.

The 2d section of our act of March 2d, 1866, provides that "nothing in the first section of this act shall be construed to alter the rules of law now in force in respect to the competency of husband and wife as witnesses for or against each other during the coverture or after its termination," &c.

The competency of Mrs. Hayes as a witness in this case, is therefore to be determined upon the rules of law in force when that statute was enacted, and entirely irrespective of its effect upon other classes of witnesses.

It is universally conceded that, by the common law, a husband or wife cannot be admitted to give evidence for or against each other.

The reason for this exclusion, is said to be founded partly on their identity of interest and partly on a principle of public policy, which deems it necessary to guard the security and confidence of private life, even at the risk of an occasional failure of justice. They cannot be witnesses for each other, because their interest are absolutely the same ; and not against each other, because this would be inconsistent with the relation of marriage ; and the admission of such evidence would lead to disunion and unhappiness, and possibly to perjury. 1 Ph. Ev. 78.

During the coverture the rule of exclusion has always been deemed absolute when the husband was a party, or was so directly interested in the event of the suit as that he could not be examined. 2 Stark (400–1) 6 Am. Ed.

So strictly is this rule of exclusion observed, that Lord Hardwicke would not suffer a wife to be examined though

her husband consented. And after the dissolution of the marriage by divorce or its termination by death, neither in the one case nor the survivor in the other, is permitted to give any evidence of what occurred during the marriage which would have been excluded if the marriage had continued.

The attempt has been made to confine this 'rule of exclusion, after termination of the marriage, to confidential communications between the husband and wife, and to allow the survivor to testify as to those matters, the knowledge of which was derived from sources other than the deceased, and not by means of the conjugal relation, upon the argument that the reason assigned for the rule, not then applying, the rule itself should cease. Though the leading elementary writers upon the subject of evidence do not sanction this distinction between the operation of the rule during marriage and after its termination. 1 Ph. Ev. 79 ; 2 Stark (400) 6 Am. Ed.; Peake Ev. 248 (Norris Ed.), it is not without support from respectable text-writers. Green. sec. 338.

While in some of the English cases, the only reason assigned for the exclusion of evidence as to confidential communications, was that they were confidential ; but one case has been cited, in which a surviving wife was permitted to testify as to what had occurred during the marriage.

In Beveridge v. Minter's ex'ors, 1 Car. and P. 364, in the sittings at *nisi prius* after Trin. Term, 1824, before Ld. Ch. J. Abbott, afterwards Ld. Quanten, the widow of the testator was called to prove certain admissions of her deceased husband. Being objected to, the Ld. Ch. J. said : "She is appearing against her own interest. This is an action brought against her husband's executors. If you (that is the executors) had called her, the other side would have asked if she took any benefit under the will." His sole ground seems to have been that she was appearing against

her own interest, and when pressed by Scarlett for the defendants, with the observation, that if the husband had been alive and the action brought against him, she could not have been a witness, it is stated that he merely replied, "at present I do not see any objection," so that there does not appear to have been much discussion in that case. Maule, J., in O'Connor v. Marjoribanks, 4 Man. & Gr. 445.

The verdict being for the defendants, this ruling of the Ld. Ch. J. could not be brought before the court in banc. It was considered to be in conflict with a ruling of Ch. J. Best, made in the succeeding sittings after Mich. Term, 1824, in the case of Doker v. Hasler, Ry. and M. 198; 2 Steph. N. P. 1760; and with the previous ruling of Ld. Alvanley in Monroe v. Twisleton, Peake Ev. App.

This conflict of decisions was finally settled, and Beveridge v. Minter expressly overruled by the court of common pleas in the case of O'Connor v. Marjoribanks, 4 Man. & Gr. 435 (43 E. C. L. R. 228), which was an action of trover for plate brought by the administratrices of an intestate. The question was as to the admissibility of the widow to prove that the plate had been pledged by her in her husband's lifetime under his authority. The attempt was made to limit the rule of exclusion of the surviving wife's evidence of what occurred during the marriage, to such matters as were in the nature of confidential communications between them. But said Tindal, Ch. J.: "But such a limitation of the rule would very often be extremely difficult of application, and would introduce a separate issue in each case as to whether or not the communications between husband and wife were to be considered of a confidential character." p. 443.

Coltman, J. "Undoubtedly that is not the rule during the lifetime of both parties; for the rule then is, that, with the exception of certain well-known instances, neither husband

nor wife can be admitted as a witness for or against the other ; and, I think, no such distinction as that now attempted to be set up, arises upon the death of one of the parties."

Maule, J., before whom the case had been tried at *nisi prius*, and who had admitted the evidence reserving the question—"Upon principle, however, I think we ought to decide against the admission of this witness. The text-books generally give, as the reason for the rule as to exclud-ing the testimony of husband or wife, the necessity of preserving confidence of the conjugal relation ; and that may be so. But it by no means follows, that the rule is co-exten-sive with the reason given in support of it ; and, indeed, it would be very inconvenient if it were so ; as the question would be frequently raised as to whether or not some par-ticular communication or fact occurring between husband and wife, was of a confidential character ; which would give rise to endless embarrassments and distrust. A rule may be a very good rule, though the reason on which it is founded may not be applicable to every case which is governed by the rule. For instance, the Statute of Frauds, 29 Charles II, c. 3, was passed to prevent, amongst other things, the setting up of fraudulent agreements ; but if it had laid down the rule, that no instrument obtained by fraud should be valid, it would have left the question, in every case, open to great difficulty as to whether there had been fraud or not. Instead of that, a clear and simple rule is established—that the agreements must be in writing and signed by the party to be charged therewith—and so the policy of the law (in order to insure conjugal confidence), has laid down a definite rule, that, in no case shall husband or wife be allowed to give evidence for or against each other. That rule extends to this case ; for though the husband is dead, the reason for the rule applies just as strongly as if he were alive."

Since this decision, it has been considered settled in England, that at common law, no such distinction as that contended for, existed ; and that the surviving husband or wife, could not be permitted to give any evidence as to what occurred during the marriage, after its termination, which would have been excluded if the marriage had continued.

Several American cases have been cited by the counsel for the defendant in error, in which a different opinion is expressed as to this distinction between the operation of the rule of exclusion after the termination, and during the continuance of the marriage. In these cases, the distinction is rather asserted or assumed to exist, and such reasons as are assigned for it, are not satisfactory.

I think the rule as laid down by the court of common pleas, in O'Connor v. Marjoribanks, which is not referred to in any of these cases, is more consistent with the principles of the common law, and tend to secure the peace and confidence of the marital relation, which are liable to be more or less impaired, if the competency of the survivor to give evidence for or against the estate of the survivor, as to what occurred during the marriage, is to be made the subject of judicial determination in each case, and to depend upon, whether it was obtained in a confidence, which is violated by the very submission of the question, should it be held to have been so obtained.

By recent acts of parliament, sweeping changes have been made in the rules of the common law in England as to the competency of witnesses. By the 16 & 17 Vic. c. 83, husbands and wives are competent and compellable to give evidence ''on behalf of any or either of the parties to the suit, action or proceeding,'' in all civil cases, except of adultery ; and neither is allowed to disclose any communication made to him or her by the other during marriage.

With this change of the policy of the law in England, we have, however, no concern in this case.   Our inquiry is confined by the provision of our statute to the rules of law in force in this state, at the time of its enactment.   What they were, so far as the question before us is concerned, is considered to have been definitively settled, and in accordance with the decision in O'Connor v. Marjoribanks, in the case of William and Mary College v. Powell, 12 Gratt. 372.

The question in this case was as to the competency of Powell, the grantor, in a deed of settlement upon his wife and children—the wife being dead, and the whole interest in the children—to prove against creditors of his assailing the deed, the considerations mentioned in the deed, in favor of those claiming under the wife.

It was held by the court, that the character of grantor in the deed, did not affect his competency.—Lee, J., pp. 383–4. In accord, Kevan v. Branch, 1 Gratt. 274, and Patteson v. Ford, 2 Gratt. 18.   But that he was not a competent witness, because he was the husband of the grantee, under whom the parties interested claimed.   In this case, no question of confidential communications was involved.   And though in some of the cases referred to by the learned judge in delivering the opinion of the court, there might have been such an element—none such was involved in the facts of the case, nor in the evidence sought to be introduced ; nor is the reasoning of the court based upon the policy of excluding such communications.   The incompetency of the witness is placed upon the general ground of the marital relation.   And that as he could not have been competent to give the evidence, in a suit against the wife, her death did not remove the incompetency to give any evidence as to matters occurring during the marriage, which would have been excluded, had it continued.

I think the decision of that case must control the case before us, and that as Mrs. Hayes could not have been admitted to give the evidence she did, if the suit had been against her husband, it was error to admit her to give it after his death.

The other judges concurred.

Judgment reversed.